IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**TONY AMOS,**

    **Plaintiff,**

                    Civil Action 2:19-cv-202
                      Chief Judge Edmund A. Sargus, Jr.
    v.                Magistrate Judge Chelsey M. Vascura

**AETNA LIFE INSURANCE COMPANY,**

    **Defendant.**

## OPINION AND ORDER

Plaintiff, Tony Amos ("Amos"), brings this action for benefits under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001, *et seq*., against Defendant, Aetna Life Insurance Company ("Aetna"). This matter is now before the Court on Aetna's Motion to Transfer Venue, ECF No. 6. For the reasons that follow, the Court **DENIES** this Motion.

### I.    BACKGROUND

Amos resides in Williamstown, West Virginia, directly over the border from Marietta, OHIO. Amos was formerly employed by The Chemours Company in West Virginia. Amos participated in a long-term disability ("LTD") plan established by The Chemours Company and insured by Defendant Aetna Life Insurance Company ("Aetna"), under Group Policy Number GP-737373-GI (the "Plan").

As of October 2015, Amos stopped working due to physical conditions. He applied for LTD benefits with supporting medical documentation from both an Ohio and a West Virginia

healthcare provider. Aetna approved the LTD benefits starting in April 2016. Amos later provided a more extensive list of his medical providers, all of whom were located throughout Ohio and West Virginia (specifically Columbus and Marietta, Ohio and Williamstown and Parkersburg, West Virginia). Amos received benefits from Aetna for the 24-month duration of the Plan's "own occupation" period. In April 2018, Aetna informed Amos that his LTD benefits were terminated going forward because he did not meet the "any occupation" definition of disability under the Plan. Within this termination letter, Aetna referenced both Ohio and West Virginia providers. Amos then timely appealed Aetna's decision. Aetna reviewed the appeal and denied it in October 2018. After exhausting his administrative remedies, Amos filed the instant action under 29 U.S.C. § 1132(a)(1)(B), seeking benefits under the Plan. Subsequently, Aetna filed the subject Motion to Transfer Venue, seeking an order transferring this action to the Southern District of West Virginia.

## II. STANDARDS

A motion to transfer venue is governed by 28 U.S.C. § 1404(a), which states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district where it might have been brought." This requires a two-part analysis: (1) whether the action could have been brought in the court where transfer is sought and, if so, (2) whether transfer is appropriate under a balance of convenience and justice factors. *Shanehchian v. Macy's, Inc.*, 251 F.R.D. 287, 289 (S.D. Ohio 2008). The transfer statute provides district courts with broad discretion to determine the appropriateness of transfer. *Reese v. CNH Amer. LLC*, 574 F.3d 315, 320 (6th Cir. 2009).

As to part one of this §1404(a) analysis, ERISA specifically addresses where actions may be brought. Venue is appropriate in any district "where the plan is administered, where the

2

breach took place, or where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2). This provision is written in the disjunctive; thus ERISA plaintiffs have a choice among proper venues. *Shanehchian*, 251 F.R.D. at 289. A defendant "resides or may be found" in any district in which its "minimum contacts" would support the exercise of personal jurisdiction. *Moore v. Rohm & Haas Co.*, 446 F.3d 643, 646 (6th Cir. 2006). In turn, this minimum contacts standard is satisfied when a "defendant's contacts with the forum state are 'substantial' and 'continuous and systemic,' so that the state may exercise personal jurisdiction over the defendant even if the action does not relate to the defendant's contacts with the state." *Id.* (internal citations omitted).

In resolving part two of this § 1404(a) analysis, a district court evaluates various private-interest factors (which have been recited in a number of ways), including: (1) the convenience of the parties and witnesses, (2) the accessibility of the evidence, (3) the availability of compulsory process, (4) the cost of obtaining willing witnesses, (5) the practical problems of trying the case most expeditiously and inexpensively, and (6) the interests of justice. *Reese*, 574 F.3d at 320. Courts may also consider public-interest factors such as (1) court congestion, (2) local interest in deciding the controversy at home, and (3) in diversity cases, the interest of conducting the trial in the forum of the governing law. *Youngblood v. Life Insur. Co. of N. Amer.*, No. 3:16-CV-34-TBR, 2016 U.S. Dist. LEXIS 50081, *2–3 (W.D. Ky. 2016) (citing *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 134 S. Ct. 568, 581 (2013)).

The defendant as movant bears the burden of showing that transfer is appropriate. The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum. *Shanehchian*, 251 F.R.D. at 289. A showing of equal convenience (or inconvenience) between forums is not enough to obtain transfer of venue. And an ERISA plaintiff's choice of forum is generally afforded extra deference. *Id.* at 292 ("In light of the intent

expressed in the congressional record, as interpreted uniformly in the federal courts, in favor of broad choice of venue for all ERISA plaintiffs, the plaintiff's choice of venue [must] be afforded a heightened level of deference, beyond the usual deference afforded plaintiffs under § 1404(a) analysis."); *see also* 15 Wright & Miller, Fed. Prac. & Proc. Juris. § 3848 (4th ed.) (discussing how context matters in granting such extra deference and summarizing how courts have given less weight to ERISA plaintiffs' choice of forum in certain situations when (1) the case involves a class action and a majority of the potential class members are located elsewhere, (2) there is a forum selection clause involved, or (3) the plaintiff's choice of forum is not the plaintiff's home forum *and* there is little to no connection between the chosen forum and the case).

### III. ANALYSIS

The Court's § 1404(a) analysis in this federal-question case boils down to a balance of the convenience and justice factors. Aetna does not assert that venue cannot lie in the Southern District of Ohio.[1] Neither does Amos contest that the Southern District of West Virginia, the district in which Amos currently lives and previously worked and received Plan benefits, is an appropriate option for venue. The only dispute is whether Aetna has adequately shown that the Southern District of West Virginia is a more appropriate choice for venue such that transfer away from this district is warranted.

As both parties have pointed out, because this is an ERISA benefits case, Amos's action

---

[1] Aetna has not denied that it operates business within the Southern District of Ohio, including Franklin County, nor could it. Aetna was unresponsive to Amos's claim that Aetna conducts business and administers plans throughout southern and eastern Ohio, only denying that the Plan itself was administered here. (Compl. ¶ 4, ECF No. 1; Answer ¶ 4, ECF No. 5.) Such allegations are therefore deemed admitted. Fed. R. Civ. P. 8(b)(6). Additionally, this Court takes judicial notice of Aetna's operations within this district as evidenced by a business records search of the Ohio Secretary of State's website and job listings on Aetna's corporate website. Fed. R. Evid. 201(b)(2); *see* 1 Weinstein's Federal Evidence § 201.12 (2019). Thus, Aetna "resides or may be found" in this district for ERISA litigation purposes.

should be decided using the administrative record on which Aetna relied when it denied his claim. *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 615–16 (6th Cir. 1998). Consequently, many of the convenience and justice factors—those relating to party convenience and cost of and accessibility to evidence and witnesses—should not come into play as they do in other civil cases.

To the extent the parties were to seek consideration of testimonial or documentary evidence outside the administrative record for a legally supported purpose, the Court does not see any reason why the witnesses involved could not travel just as easily to Columbus, Ohio as to Charleston, West Virginia, where the prospective transferee court is located. Amos and his physicians must travel out of town regardless. Such medical providers (and their medical records) are located across central Ohio, southeastern Ohio, and northwestern West Virginia, despite Aetna's many repeated attempts to overlook the involvement of Ohio providers. By Aetna's own calculation, and the Court's judicial notice of geography, there is less than a 40-mile travel difference for Amos and his medical providers to the courthouse in Columbus versus Charleston. And Aetna's claim that its possible witnesses would be traveling from Connecticut or Florida certainly does not weigh in favor of either of these venues.[2]

Further, this Court does not give any weight to Aetna's attempt to argue on Amos's behalf that it is "highly" more inconvenient for Amos to travel those approximately 35 miles. Amos readily accepted this difference when choosing to file his action in this Court, and this Court does not validate Aetna's self-serving argument that if Amos really is suffering from

---

[2] Aetna asserts that any possible company witnesses are located in Connecticut or Florida. The Court notes that several of Aetna's documents are addressed from Kentucky. Because all of these locations are outside the two forums at question, the location of these possible witnesses does not affect the Court's decision at hand.

disabling conditions, traveling outside West Virginia would cause unnecessary physical and financial hardship. This is not Aetna's argument to make. *See Roberts v. Norfolk S. Ry. Co.*, No.05-cv-74484, 2006 U.S. Dist. LEXIS 96680, at *4 (E.D. Mich. May 24, 2006) (recognizing that it is "not proper for Defendant to object to any inconvenience caused to Plaintiff by his selection of court . . . as Plaintiff has the right to select the forum in which [an action] is brought." (citing *Hayes v. Chesapeake & O. Ry. Co.*, 374 F. Supp. 1068 (S.D. Ohio 1973)); *Ruckman v. Life Ins. Co. of N. Am.*, 2:07-CV-0474, 2007 U.S. Dist. LEXIS 89996, at *5 (D. Nev. Nov. 29, 2007) ("Defendant's arguments that it may be difficult or impossible for Plaintiff to appear for deposition or trial, or to obtain the necessary witnesses at trial, is a little self-serving. It is Plaintiff's choice to make, not Defendant's to make for her. And Plaintiff has the right to choose."). Nor does this Court find such a relatively short difference in travel time significant enough to warrant being inconvenient at all, let alone "highly" inconvenient.

As to the remaining convenience and justice factors—specifically, the practical problems of trying the case most expeditiously and inexpensively, local interest, and any other interests of justice—the Court finds that the balance favors retaining the case in this district. Though Aetna would have this Court overlook any financial impact that a transfer would have on Amos as simply being "self-imposed," this Court finds such impact to be a relevant factor. *See, e.g.*, *Blumenthal v. Mgmt. Assistance, Inc.*, 480 F. Supp. 470, 474 (N.D. Ill. 1979); *Flint v. UGS Corp.*, No. C07-04640, 2007 U.S. Dist. LEXIS 94643, at *11 (N.D. Cal. Dec. 12, 2007) (finding the location of plaintiff's counsel relevant in its inquiry to the extent that counsel's location affects the relative costs of litigating in each district). Amos lives on the West Virginia–Ohio border. It was reasonable for him to seek legal representation from an attorney in Ohio (just as he has received medical care from providers in Ohio), especially for a case arising under federal

6

law. Staying in this Court would avoid imposing additional expenses on Amos necessitated by obtaining local West Virginia counsel if the case were transferred, as well as avoid the burdensome choice of Amos either cutting ties with his established Ohio counsel or bearing additional expenses to retain his counsel. On the flip side, Aetna has not shown any additional financial costs it would incur by staying here rather than transferring districts.

Aetna's arguments suggest that it is more concerned about the relative expediency of litigating the case in each district as opposed to the relative expense. Aetna supports its claims of court congestion with a comparative number of civil case filings in 2018, including a per judge calculation. But just knowing the raw number of civil cases filed in each district says little as to the speed or efficiency in which each district disposes of cases, and even less as to how quickly each assigned judge would deal with the instant case. *Steelcase, Inc. v. Mar-Mol Co., Inc.*, 210 F. Supp. 2d 920, 941 (W.D. Mich. 2002) ("[R]aw figures comparing caseloads are entitled to little weight."); *Diversified Metal Distribs., LLC. v. AK Steel Corp.*, No. 6-55-KKC, 2007 U.S. Dist. LEXIS 7553, *9 (E.D. Ky Feb. 1, 2007) ("The mere fact that the caseload is higher does not show congestion of the courts[.]"); *see also ITS Fin., LLC v. Advent Fin. Servs., LLC*, No. 3:10CV0041, 2010 U.S. Dist. LEXIS 95025, *9-12 (S.D. Ohio Aug. 23, 2010) (recognizing that statistics gathered from prior year did not necessarily reflect the relative docket congestion experienced currently, nor the relative complexity of the cases or relative caseloads of individual judges, which are significant factors).

The Court would merely be speculating about the actual state of congestion in each district at this time, especially since the Southern District of Ohio has recently gained a new district court judge, which significantly calls into question the continued validity of the presented statistics. Additionally, the Court realizes that the process of transfer to a new district necessarily

causes a loss of time that offsets any possible gain. *See Steelcase*, 210 F. Supp. 2d at 942 (recognizing that even though case was still in early stages, transferring the case "would require another judge to spend time getting up to speed . . . and would probably delay the final resolution[.]"); *Winnett v. Caterpillar, Inc.*, No. 3:06-cv-00235, 2006 U.S. Dist. LEXIS 95973, at *17–18 (M.D. Tenn. June 20, 2006) (considering the time that would be lost while transferring the case to weigh against defendant's congestion argument).

Finally, Aetna has not shown any local expertise or particular interest in deciding this case in West Virginia. This is a federal question, not just a local controversy. Aetna fails to provide any evidence that this Court is any less versed in ERISA law than the district court in West Virginia.

When taken together, these balancing factors weigh in Amos's favor as an ERISA plaintiff. Aetna's insistence that, because Amos did not file in his home forum, his choice of venue should lose deference is not well-taken. Courts have given less deference to out-of-forum plaintiffs *when* there is "little or no" connection between the forum and the case. But the Southern District of Ohio has more than a negligible connection to this case vis-à-vis the multiple Ohio medical providers involved with Amos's care throughout his disability claims process, so Amos's choice of this forum does not lose its deference. Though Aetna has spent a lot of time arguing that Amos's choice of venue should not be given "heightened" deference, Aetna has failed to even tip the scales in its favor as to the usual deference afforded plaintiffs under §1404(a). This Court agrees with Amos that Aetna relies on cases that are distinguishable,

involving situations warranting less deference that do not apply here.[3] Therefore, because this Court does not find that Aetna has made any showing strong enough to overcome Amos's choice of venue, venue will remain in this Court.

## IV. DISPOSITION

For the foregoing reasons, Aetna's Motion to Transfer Venue (ECF No. 6) is **DENIED**. Pursuant to this Court's prior Order (ECF No. 14), the parties are now **DIRECTED** to submit a revised Rule 26(f) Report **WITHIN FOURTEEN DAYS**.

**IT IS SO ORDERED.**

*/s/Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE

---

[3] For example, Aetna relies heavily on non-ERISA cases, such as *Seifert v. Schoeckler*, No. 1:16-CV-2629, 2017 U.S. Dist. LEXIS 11459 (N.D. Ohio Jan. 27, 2017), and *Armco, Inc. v. Reliance Nat'l Insur. Co.*, No. C-1-96-1149, 1997 U.S. Dist. LEXIS 7880 (S.D. Ohio May 30, 1997); ERISA class actions with members outside the chosen forum, like *Lewis v. Allegheny Ludlum Corp.*, No. 4:11-CV-2517, 2011 U.S. Dist. LEXIS 148584 (N.D. Ohio Dec. 21, 2011); and cases with zero real connection to the forum state, like *Central States, Se. & Sw. Health & Welfare Fund v. Guar. Trust Life Ins. Co.*, 8 F. Supp. 2d 1008 (N.D. Ohio 1998) (noting only one uninvolved policyholder in this breach of fiduciary duty case resided in forum state while all parties to suit, witnesses, and documents found outside the forum).